IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VANESSA BUDHUN, | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | No. 10-CV-06921 |
| | : | |
| THE READING HOSPITAL AND | : | |
| MEDICAL CENTER, | : | |
| Defendant | : | |

## M E M O R A N D U M

**Stengel J.,**                                                    **November 30, 2011**

This is a Family Medical Leave Act ("FMLA") case.  The plaintiff, Vanessa Budhun, injured her finger and was placed on FMLA leave.  The plaintiff now brings claims under the FMLA for interference and retaliation as a result of her termination.  The defendant Reading Hospital and Medical Center ("TRHMC") has moved for summary judgment on these claims.  After considering the parties' memoranda, I will grant the defendant's motion.

## I.      Background[1]

Plaintiff, Ms. Budhun began working for Berkshire Health Partners ("BHP"), an affiliate of defendant, TRHMC, as a temporary employee in January 2008 until April 14, 2008 when she was permanently hired as a credentialing assistant.[2]  (Doc 29-3 at ¶ 1).  A

---

[1] I have viewed the facts in the light most favorable to the Plaintiff, as the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Where the facts are not disputed, I cite the paragraphs from the Defendants' Statement of Undisputed Material Facts after my careful examination of the record.  I have also considered plaintiff's statement of disputed and undisputed material facts and reference plaintiff's facts where she accurately cites to the record.

[2] Ms. Budhun took the place of an employee, Ms. Linda Shriner, who was separated from employment due to exhausting her available leave of absence on March 18, 2008.  Ms. Shriner was later terminated on April 3, 2008.

credentialing assistant ensures that medical providers' credentialing applications are verified and processed by completing primary source verifications, completing provider files, and entering data into a database. The job also includes printing, mailing letters and applications, scanning, and data entry. (Doc 29-3 at ¶ 5).

During her employment, Ms. Budhun was subjected to two separate corrective actions. The first was on January 8, when Ms. Budhun called her supervisor, Sherri Alvarez, a "f**king liar."[3] (Doc. #27 at ¶ 5). The second corrective action was issued on January 25, 2010 for excessive tardiness.[4] Ms. Budhun also twice requested leave under the Family Medical Leave Act ("FMLA").[5]

Under the FMLA, TRHMC provides up to twelve (12) work weeks of job-protected FMLA leave to eligible employees during a rolling twelve-month period.[6] (Doc. #27 at ¶ 9). TRHMC requires medical certification of an employee's ability to return to work before the employee is restored to their former position of employment. (Doc. #27 at ¶ 11). Employees of TRHMC are also eligible for a non-FMLA leave, which is unprotected time off, but provides the employee with health and other benefits. (Doc. #27 at ¶ 27). An employee who fails to return to work from non-FMLA leave

---

[3] Ms. Alvarez was Ms. Budhun's direct supervisor from the summer of 2009 and at all times relevant to this action. (Doc 29-3 at ¶ 2).

[4] TRHMC's published transferred policy states that an individual who has been disciplined in the last year resulting in a final written warning or higher from the date of their application for transfer is ineligible to transfer to another position within TRHMC. (Doc. #27 at ¶ 7).

[5] Ms. Budhun made requests for FMLA leave based on two different incidents. Ms. Budhun first requested and took FMLA leave beginning March 31, 2010 through April 16, 2010, and then again from April 26, 2010, through May 7, 2010 due to complications from a pregnancy. Ms. Budhun was reinstated from that leave on May 10, 2010. (Doc 29-3 at ¶ 6).

[6] Ms. Budhun admits that she received at least twelve weeks of leave under the FMLA in calendar year 2010. (Doc. #27 at ¶ 33).

might be considered to have voluntarily quit.  (Doc. #27 at ¶ 28).  Ms. Budhun's FMLA
leave and non-FMLA leave requests were managed by Stacy Spinka who worked in the
Human Resources department of TRHMC.  (Doc 29-3 at ¶ 4).

On July 30, 2010, Ms. Budhun broke her right pinky finger and was fitted with
metal splint.  (Doc 29-3 at ¶ 8).  On August 2, 2010, after her direct supervisor, Sherri
Alvarez, asked her for a doctor's note, Human Resources Generalist, Stacy Spinka
contacted Ms. Budhun and told her to request FMLA leave for her injury and provided
Ms. Budhun with FMLA paperwork.  (Doc 29-3 at ¶ 9-10).  On August 3, Ms. Budhun
met with Dr. Richard Battista, who fitted her with a new splint and taped three of her
fingers together to immobilize the pinky.  (Doc 29-3 at ¶ 11).  On August 10, Ms.
Budhun met with Dr. Battista again, and after discussing Ms. Budhun's work duties, Dr.
Battista wrote her a return to work note that stated "No restrictions in splint.  Return to
work 8/16/2010."  (Doc 29-3 at ¶ 12-13).

On August 16, 2010, Ms. Budhun returned to work and sent an email to Ms.
Spinka explaining that she had the use of only seven fingers, but felt that she could do her
job.  (Doc 29-3 at ¶ 15).  Ms. Budhun believed that she could perform all the essential
functions of her position without accommodation, but explained she could not type as fast
as she did before her injury.  (Doc 29-2 at ¶ 16-17, 20-B).  Ms. Spinka told Ms. Budhun
she would need to be able to function at the same typing speed that she had prior to her
injury and that she should be reevaluated by her physician.  (Doc 29-2 at ¶ 20-B); Def.
Exhibit R.  After this email correspondence with Ms. Spinka, Dr. Battista issued Ms.

3

Budhun a note excusing her from work until reevaluation on September 8, 2010.  (Doc 29-3 at ¶ 20).

On September 8, Dr. Battista prescribed occupational therapy and wrote Ms. Budhun a note stating that she would be out of work at least until the next appointment on November 9, 2010 and that the physical therapist would communicate with him about when Ms. Budhun felt she could return to work.  (Doc 29-3 at ¶ 21-22).  Ms. Budhun communicated this to Ms. Alvarez and Ms. Spinka, who both acknowledged the situation. (Doc 29-3 at ¶ 23-25).  Ms. Budhun's first physical therapy session was on September 10, 2010.  At this session, she developed a recovery plan with her therapist where Ms. Budhun indicated a goal to get back to work within a month.  (Doc 29-3 at ¶ 26-27).

On September 13, Ms. Budhun emailed Ms. Alvarez and Ms. Spinka that Dr. Battista would release her to work earlier than November 8th and that she believed she would be able to return by the end of September.  (Doc 29-3 at ¶ 29).  Her FMLA leave was extended to September 23, 2010, which was the date of its exhaustion.  (Doc 29-3 at ¶ 30).  Ms. Budhun knew that her position was not guaranteed once her FMLA leave was exhausted.  (Doc. #27 at ¶ 26).  Ms. Budhun was also aware that she was eligible for non-FMLA leave until November 9, 2010, and that she would continue to receive benefits during that time.  (Doc. #27 at ¶ 29).

On September 15, 2010, Ms. Alvarez along with Mr. Will, the president of BHP, and Ms. Dreibelbis, the Director of Health and Lifestyle Management, had a telephone meeting with Human Resources regarding Ms. Budhun's absence.  (Doc 29-3 at ¶ 30).  In her deposition, Ms. Alvarez stated that during the meeting the participants asked where

4

Ms. Budhun stood as far as her FMLA leave and her transition to a non-protected leave. See Alvarez Depo. Exhibit R at 87-91.  Ms. Spinka stated in her deposition that the "purpose was to determine, per policy, what BHP's options were to cover the work that [Ms. Budhun] was doing prior to going out on leave."  (Doc. # 27-1 Exhibit C at 45). However, no other options for handling Ms. Budhun's leave other than replacing her were discussed at the September 15th meeting.  (Doc 29-3 at ¶ 35).

Ms. Budhun's splint was removed sometime before her September 23rd physical therapy appointment allowing her full use of nine fingers.  (Doc 29-3 at ¶ 41-42).  After her physical therapy appointment on September 23, 2010, Ms. Budhun called Ms. Alvarez to inform her that she should be returning to work the week of September 27, 2010.  (Doc 29-3 at ¶ 43).  That same day at 12:54 PM, Mary Solynties, Charles Will's administrative assistant, submitted a form to Human Resources requesting that Ms. Rushow, an employee who had partially taken over for Ms. Budhun during her leave, replace Ms. Budhun.  Ms. Rushow was offered the position on September 25, 2010 and Human Resources completed the necessary paperwork two days later.  (Doc 29-3 at ¶ 46-47).

During this time, Ms. Alvarez attempted to contact Ms. Budhun, through phone and email, to let her know that her position was no longer available.  (Doc 29-3 at ¶ 448-49).  Ms. Budhun sent an email on September 29, 2010 telling Ms. Alvarez and Ms. Spinka that she would return to work on October 4.  (Doc 29-3 at ¶ 50).  Ms. Budhun was informed that her position had been filled.  Through additional communications, Ms. Spinka informed Ms. Budhun that because of her prior written discipline, she would not

be able to transfer to another position within the hospital, but she would be eligible for rehire.  (Doc 29-3 at ¶ 53).

Ms. Budhun did not apply for any position at TRHMC and did not contact Human Resources or return to work after the expiration of her non-FMLA leave on November 9, 2010.[7]  (Doc 27 at ¶ 59-60).  Due to her inaction, Ms. Budhun was separated from employment on November 10, 2010.  She contends that this separation and the events preceding it violated her rights under the FMLA.

## II.   Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party" based on the evidence in the record.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" when it "might affect the outcome of the suit under the governing law."  Id.

A party seeking summary judgment initially bears responsibility for informing the court of the basis for its motion and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating to the district court that "there is an absence of evidence to

---

[7] Ms. Budhun was asked to pick up her belongings and return her ID badge and keys on October 6, 2010.  (Doc 29-3 at ¶ 56).

support the non-moving party's case." Id. at 325.  After the moving party has met its initial burden, the adverse party's response must cite "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1). Summary judgment is therefore appropriate when the non-moving party fails to rebut by making a factual showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Rule 56 of the Federal Rules of Civil Procedure, the court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255.  The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252.  If the non-moving party has produced more than a "mere scintilla of evidence" demonstrating a genuine issue of material fact, then the court may not credit the moving party's "version of events against the opponent, even if the quantity of the [moving party's] evidence far outweighs that of its opponent."  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.      Discussion

Congress enacted the FMLA in 1993 to accommodate the important societal interest in assisting families by establishing a minimum labor standard for leave "in a manner that accommodates the legitimate interests of employers."  29 U.S.C. §

2601(b)(3); <u>Sommer v. Vanguard Group</u>, 461 F.3d 397, 398-99 (3d Cir. 2006).  The

FMLA entitles employees to take up to twelve weeks of time off to address serious

medical issues, without fear of termination or other reprisals by employers.  29 U.S.C. §

2612(a)(1)(D); 29 U.S.C. § 2615(a)(1).

      To safeguard its entitlements, the FMLA creates two types of claims: "interference

claims," which arise when employers deny or otherwise restrain or interfere with an

employee's rights under the FMLA and "retaliation claims," which arise when an

employer discriminates against an employee for invoking her entitlements under the

FMLA.[8]  29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c).  <u>See also</u> <u>Churchill v. Star Enters.</u>,

183 F.3d 184, 192 (3d Cir. 1999); <u>Conoshenti v. Public Serv. Elec. & Gas Co.</u>, 364 F.3d

135, 147 n.9 (3d Cir. 2004).

      In her complaint, Ms. Budhun asserts both types of claims under the FMLA.  She

claims that TRHMC (1) interfered with her rights under the FMLA by failing to reinstate

her when she was capable of performing the essential functions of her job; and (2)

retaliated against her for exercising her rights under the FMLA by terminating her.

    A.       <u>Plaintiff's Interference and Failure to Reinstate Claims Under the FMLA</u>

      In order to assert an interference claim, the plaintiff employee needs to show that

she was entitled to benefits under the FMLA and that she was denied those benefits.  29

U.S.C. §§ 2612(a), 2614(a).  The Act provides that "it shall be unlawful for any employer

---

[8] Three provisions collectively form the basis of liability under the FMLA.  Two subsections of 29 U.S.C. § 2615(a) provide: (1) It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter; and (2) It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter. In addition, 29 C.F.R. § 825.220(c) prohibits employers from discriminating against employees or prospective employees who have used FMLA leave.

to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).  Under this theory, the employee need not show that she was treated differently than others.  Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005).  Further, the employer cannot justify its actions by establishing a legitimate business purpose for its decision.  Id. at 119-120.  "If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred."  Whitman v. Proconex, Inc., 2009 U.S. Dist. LEXIS 4016, *22 (E.D. Pa. 2009) (citing Arban v. West Pub. Corp., 345 F.3d 390, 401 (6th Cir. 2003)).  Additionally, an employee may not be required to take more FMLA leave than necessary to resolve the circumstances that precipitated the need for that leave. 29 C.F.R. § 825.311; Howard v. Pa. Dep't of Pub. Welfare, 2011 U.S. Dist. LEXIS 127653, *16-17 (E.D. Pa. Nov. 3, 2011).

To succeed on a claim under the FMLA for failure to reinstate to an equivalent position, a plaintiff must establish: (1) that she was not returned to an equivalent position when she returned from leave, and (2) that she could perform the essential functions of the position.  Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 384 (3d Cir. 2002).  The relevant factors in determining the essential job functions of the co-manager position are: "(i) [t]he employer's judgment as to what functions are essential; (ii) [w]ritten job descriptions prepared before advertising or interviewing applicants for the job; (iii) [t]he amount of time spent on the job performing the function; [and] (iv) [t]he consequences of not requiring the incumbent to perform the function."  Skerski v. Time Warner Cable Co., 257 F.3d 273, 279-80 (3d Cir. 2001).  In addition, another important factor in

determining an essential job function is "the employee's actual experience as well as that of other employees." Id.; see also Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 326 (3d Cir. 2003).

Ms. Budhun argues that she tried to return to work but the defendant forced her to take full FMLA leave until she was no longer restricted by her pinky finger.[9]  Ms. Budhun argues that she was capable of performing the essential job functions required by her position, yet the defendant refused to allow her to return.  The defendant asserts that Ms. Budhun was not on FMLA leave when she claims the interference or failure to reinstate occurred. [10] (Doc. #32 at 6).

Ms. Budhun cannot show, pursuant to an interference claim, that she was denied rights under the FMLA, or that the defendant attempted to interfere with those rights. Ms. Budhun is also likely unable to establish a prima facie case under her failure to

---

[9] Ms. Budhun's allegations resemble an involuntary leave theory, which has not been adopted in this circuit.  See Figueroa v. Merritt Hospitality, LLC, 2011 U.S. Dist. LEXIS 107465 (E.D. Pa. Sept. 21, 2011).  The Figueroa court dismissed the plaintiff's interference claim and briefly referenced the Sixth Circuit's explanation of the involuntary leave theory for an interference claim under the FMLA.  Figueroa, 2011 U.S. Dist. LEXIS 107465, at *9 n. 3 (citing Wysong v. Dow Chemical Company, 503 F.3d 441 (6th Cir. 2007)).

In Wysong, the Sixth Circuit Court of Appeals addressed a case in which the plaintiff claimed that her employer violated the FMLA by forcing her to take three days of FMLA leave when she did not need to take FMLA leave.  Wysong v. Dow Chemical Company, 503 F.3d 441, 448-49 (6th Cir. 2007).  The court held that in order to state a claim for FMLA interference under an "involuntary leave" theory, employees must allege that the defendant-employer forced them to take FMLA leave when they did not have a "serious health condition" that precluded them from working and that the employees sought and were denied FMLA leave at a later date because they were "wrongfully forced to use FMLA leave in the past."  See id. at 449.  In Wysong, although the plaintiff did clearly allege that she did not suffer from a serious health condition when she was forced to take leave, the court held that her claim failed as a matter of law because she did not also allege that she later requested and was denied FMLA leave.  Id. at 450.

[10] The Third Circuit has recently interpreted the requirement that an employee "take" FMLA leave to connote invocation of FMLA rights, not actual commencement of leave.  Erdman v. Nationwide Insurance Company, 582 F.3d 500, 2009 U.S. App. LEXIS 20979, *23 (3d Cir. September 23, 2009).  Although the facts of this case do not directly relate to Erdman, the timing in that case is relevant to the issue of whether TRHMC could have, in fact, "interfered" with Ms. Budhun's FMLA leave on the date that she returned to work after her injury, August 2, 2010, and had to request FMLA leave until her doctor approved her to return.

reinstate claim.  Although Ms. Budhun argues that she was able to perform the essential functions of the job, she stayed on FMLA leave until it expired after which time she remained on non-FMLA leave.  She was never medically cleared to return to work and although she claimed she would have full use of her fingers on multiple occasions a doctor's note was never provided to defendant.

Additionally, by pleading that she was fully capable of working at the time she was placed on alleged involuntary leave, she essentially admitted that she was not, at that time, entitled to FMLA leave.  Because she was not entitled to FMLA leave, she was also not entitled to the protections of the FMLA.  See Figueroa v. Merritt Hospitality, LLC, 2011 U.S. Dist. LEXIS 107465, *11 (E.D. Pa. Sept. 21, 2011) (stating that plaintiff's claims that she was fully capable of working essentially admitted that she was not entitled to the protections of the FMLA).  Accordingly, I will grant the defendant's motion for summary judgment as to the FMLA interference claim in Count One of the complaint.

B.        Plaintiff's Retaliation Claim Under the FMLA

When analyzing FMLA retaliation claims, courts must apply one of two burden-shifting schemes.  See Hayduk v. City of Johnstown, 580 F. Supp. 2d 429, 458 (W.D. Pa. 2008).  If a plaintiff has direct evidence of retaliation, the courts use the analysis articulated in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).[11]  See Hayduk, 580 F. Supp. 2d at 458.  However, if the evidence of retaliation is circumstantial, then courts

---

[11] "Although Congress overruled the Price Waterhouse test in the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e-2, 2000e-5(f), that Act applies only to Title VII cases and, thus, courts continue to use the Price Waterhouse analysis in other non-Title VII discrimination cases."  Lackman v. Recovery Servs. of New Jersey, Inc., No. 06-2016, 2008 U.S. Dist. LEXIS 11085, at *16-17 n.4 (D.N.J. Feb. 13, 2008).

review the case under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u>

<u>Hayduk</u>, 580 F. Supp. 2d at 458.

Because Ms. Budhun presents circumstantial evidence to support her retaliation

claim, she must first establish a prima facie case under the latter framework.  The

plaintiff can show a prima facie case by establishing that (1) she engaged in a protected

activity; (2) her employer took an adverse action against her; and (3) there is a causal

connection between the protected activity and the adverse action.  <u>Woodson v. Scott</u>

<u>Paper Co.</u>, 109 F.3d 913, 920 (3d Cir. 1997); <u>Erdman v. Nationwide Ins. Co.</u>, 582 F.3d

500 (3d Cir. 2009).  The burden then shifts to the employer to proffer legitimate, non-

discriminatory reasons for the adverse action.  <u>Id.</u> at n.2.  If the employer meets that

burden, the employee must provide evidence that the employer's stated reasons are

pretextual, and that the real reason for the adverse action was discriminatory.  <u>Id.</u>  A

plaintiff can meet this final burden by showing that an employer's alleged reasons for the

action contain "such weaknesses, implausibilities, inconsistencies, incoherencies or

contradictions" that a jury could rationally fail to credit them.  <u>Fuentes v. Perskie</u>, 32 F.3d

759, 765 (3d Cir. 1994).

Whether Ms. Budhun was entitled to and qualified for the benefits of the FMLA is

discussed above.  The parties also dispute whether Ms. Budhun has established prongs

two and three of her prima facie case.

<u>Adverse Employment Action</u>:  Ms. Budhun argues that she clearly suffered an

adverse employment action – her termination.  Defendant argues that Ms. Budhun's

termination is not adverse for purposes of an FMLA retaliation claim because Ms. Budhun could not have returned to work at the time of her termination.

Courts have held that terminating an employee when that employee is unable to return to work is not an adverse employment action.  Katekovich v. Team Rent a Car, Inc., 36 Fed.  Appx. 688, 690 (3d Cir. 2002) ("If the employee is not able to return to work after twelve weeks, however, the employer may terminate the employee.").  See also Dogmanits v. Capital Blue Cross, 413 F. Supp. 2d 452, 464 (E.D. Pa. 2005) ("to show that termination was adverse, Plaintiff needs to present evidence indicating that she could have performed her job duties at the time of her termination").

Defendant argues that Dr. Battista's note states that Ms. Budhun could not return until at least November 9, 2010 when he would reevaluate her progress.  Ms. Budhun alleges that she could have returned to work and was able to perform the essential functions of her job immediately after her injury.  However, Ms. Budhun continually made statements that she would return to work, when in fact she could not.  The physical therapy assessment plan indicated that Ms. Budhun wanted to return to work within a month and that fact continued to be noted in her file long after a month's time had elapsed and she remained on leave.  (Doc. # 27-2 Exhibit M).  Although termination may, at first glance, appear to be an adverse employment action, Ms. Budhun was unable to return to work and, therefore, her separation from employment was not an adverse employment action under the FMLA.

Causation: The remaining question under Ms. Budhun's retaliation claim is whether she has established a causal connection between her exercise of FMLA rights

13

and her termination.  The Third Circuit, while recognizing that "the mere fact that adverse employment action occurs after [a protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link," has also clarified that when the alleged retaliatory action is "unusually suggestive" of retaliatory motive, a causal link may be inferred.  Reinhart v. Mineral Technologies, Inc., 2006 U.S. Dist. LEXIS 89279, 2006 WL 4050695 at *11 (E.D. Pa. Nov. 27, 2006) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997)).  "When a plaintiff is relying upon temporal proximity to satisfy her prima facie case for the purpose of summary judgment under McDonnell Douglas, close temporal proximity can, by itself, support a finding of causation."  Id. at n. 10 (citing Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)).

Although the Third Circuit has not adopted a bright line rule to infer a causal link, various cases provide guidance.  See e.g., Doe v. C.A.R.S. Prot. Plus, 527 F.3d 358, 369 (3d Cir. 2008) (three-day gap unusually suggestive); Alexander v. Keystone Mercy Health Plan, 2007 U.S. Dist. LEXIS 41219, at *14-15 (E.D. Pa. June 5, 2007) (two-week gap unusually suggestive); Szustowicz v. City of Phila., 2003 U.S. Dist. LEXIS 5621, at *22 (E.D. Pa. Mar. 27, 2003) (one day gap unusually suggestive); Reinhart v. Mineral Techs., Inc., 2006 U.S. Dist. LEXIS 89279,*35  (E.D. Pa. Nov. 27, 2006) (finding that the temporal proximity was unduly suggestive where "over a period of approximately twenty-four hours, [the plaintiff's] initial FMLA leave ended, the termination decision was made, and he requested additional leave"); but see, Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (two months was not unusually

suggestive), and <u>Carmody v. Pa. State Univ.</u>, 2007 U.S. Dist. LEXIS 26064, at *25 (M.D. Pa. Apr. 9, 2007) (one month gap not unusually suggestive).

Ms. Budhun claims that the temporal proximity between her leave and termination is sufficient to establish a prima facie case contending that the defendant made the decision to terminate her and fill her position during the September 15th meeting.[12] Defendant argues that Ms. Budhun cannot establish the third prong because the only evidence she provides is her termination on November 10, 2010 after her FMLA leave and non-FMLA leave expired.  On that date, Ms. Budhun failed to return to work or contact Human Resources.  Defendant also contends that Ms. Budhun, in her own words, "gave up," and her inability to transfer to another position within the hospital was because of the correctional action she received long before she took FMLA leave.

I agree with defendant.  The "temporal proximity" is not unduly suggestive of a causal link between Ms. Budhun's FMLA leave and her termination.  Ms. Budhun's argument concerning her date of termination confuses the "decision to replace her" with the "decision to replace her if she was unable to return after her FMLA leave was exhausted."  The record indicates that the September 15th meeting was simply to evaluate BHP's options if Ms. Budhun could not return after the expiration of her FMLA leave.[13] Ms. Spinka testified in her deposition that no decision was made during the meeting. (Doc. # 27-1 Exhibit C at 52).  Ms. Alvarez stated in her deposition that the people taking

---

[12] Ms. Budhun argues that the meeting participants had already decided that they wanted to replace her before requesting the September meeting.  (Doc 29-3 at ¶ 35).

[13] Mr. Will stated in his deposition that the meeting was an "update on [Ms. Budhun's] leave of absence." (Doc. # 27-2 Exhibit D at 45).

part in the September 15th meeting "didn't give the job to [Ms. Rushow].  We were just looking at what we were going to do if [Ms. Budhun] wasn't going to return…. [Ms. Rushow] was available for hire … if our position became available that [Ms. Budhun] was not returning."  See Alvarez Depo. Exhibit R at 110.

Ms. Budhun was terminated on November 10, 2010 almost two months after she took FMLA and after the expiration of her protected and unprotected leave.  The temporal proximity is not sufficient to show causation.  She continued to receive healthcare and other benefits provided by TRHMC.  Even on her date of termination, Ms. Budhun remained unable to return to work as indicated by Dr. Battista.[14]  Additionally, Ms. Budhun had the option to be re-hired as she could not transfer due to her previous disciplinary actions, yet she made no diligent attempt to search or apply for a position.  I find that Ms. Budhun failed to satisfy her burden of proof because she did not establish a prima facie case under the FMLA.

## IV.    Conclusion

For the foregoing reasons, I will grant defendant's motion for summary judgment as to Ms. Budhun retaliation claim and her FMLA claims for interference and failure to reinstate.

An appropriate order follows.

---

[14] Ms. Budhun claims she was using her non-FMLA leave only until October 4, 2010 when she said she could return.  Contrastingly, the note from Dr. Battista indicated Ms. Budhun would be out of work until at least November 9, 2010, after which Ms. Budhun still did not return to work.  Ms. Budhun made various claims that she could return to work, yet even after her non-FMLA leave expired, she failed to return.